MITCHELL *v.* MANDEVILLE MILLS *et al.*

No. 10615. JULY 10, 1935.

*Willis Smith,* for plaintiff.

*Boykin & Boykin* and *O. W. Roberts,* for defendants.

HUTCHESON, Justice. N. G. Mitchell filed suit against the Mandeville Mills, the Peoples Bank, and the First National Bank of Carrollton, corporations of Carroll County, alleging in substance as follows: On November 21, 1925, he executed to the First National Bank of Carrollton a security or loan deed to secure a note for $688.50, conveying title to certain property described in said deed. Later the First National Bank was merged with the Peoples Bank. On January 23, 1932, petitioner executed to the Peoples Bank a renewal note and security deed on consideration of $863.55. At the time of filing the petition he had paid all of said note except approximately $60, and the Peoples Bank claimed only a balance of $97 as due on said note, $30 of which was claimed for an insurance premium paid by the bank. When petitioner tendered to the bank the balance claimed, he was informed that the note together with the security deed had been transferred to the Mandeville Mills, which had paid off said indebtedness and had the security transferred to it. When he tendered the balance due to the Mandeville Mills, he was informed that the Mandeville Mills held other indebtedness against him, and that corporation refused to surrender the security deed unless the entire indebtedness was paid. The Mandeville Mills was trying to hold the security that was transferred to it by the Peoples Bank to secure other indebtedness due the Mandeville Mills that was not in any way connected with the transaction between petitioner and the Peoples Bank, and which the deed was not executed to secure.. The note and security deed to the Peoples Bank were transferred to the Mandeville Mills without the knowledge or consent of petitioner, and Mandeville Mills had no legal or equitable right to hold them for security for anything except the balance due on the note to the Peoples Bank, which the deed was executed to secure. Petitioner made a tender of the balance due to the Peoples Bank and to the Mandeville Mills,

and made a tender in court of the balance due on the note payable to the Peoples Bank which the deed was executed to secure. He prayed that the deed and notes be delivered up for cancellation, and that the title to the property be decreed in him.

After the suit by Mitchell was filed, Mandeville Mills sued out an attachment upon the ground that Mitchell was a non-resident. This attachment was levied on the land in dispute.

The cases were consolidated and tried together, and were submitted to the court without a jury on agreed facts. The note from Mitchell to the Peoples Bank, dated January 23, 1932, had this stipulation: "Each of us agrees that any and all deposits due by said bank to either of us may at all times be considered by the bank as collateral to this loan, and may be applied at any time by said bank, in whole or in part payment of this loan; and in consideration of $1.00 and other valuable consideration, we and each of us assign and make over our right and title to the homestead exemption, and authorize the holder of this note to claim same, in case we fail or refuse to do so, in the event of bankruptcy, and to exercise all the rights and privileges and title hereto that we or either of us have." This note showed a transfer to Mandeville Mills. Another note for $28.30 had the same stipulation, and was also transferred to Mandeville Mills. The two notes totaled approximately $97. Transfers were dated November 21, 1932. The security deed executed on January 23, 1932, by Mitchell to the Peoples Bank contained the following stipulations: "This deed is made to secure the payment of a debt pursuant to the laws of Georgia in such cases made and provided, or any renewal of said debt, or any part thereof, which debt is evidenced by a note dated January 23rd, 1932, due November 1st, 1932, for $863.55, as well as to secure the payment of any other indebtedness now or hereafter owing to the said party of the second part by said party of the first part, either as sole debtor, joint promisor, guarantor, or otherwise. Should the above-described note or notes, or any renewal thereof, and the interest thereon, be paid according to the tenor and effect thereof when the same shall become due and payable, and should the said party of the first part pay in full all other indebtedness secured by this deed and well and truly keep and perform all and singular the covenants, conditions, stipulations, and agreements herein contained for the said party of the

first part to keep and perform, then this deed shall be canceled and surrendered, in accordance with section 3309 of the Civil Code of Georgia of 1910; it being intended by the parties hereto that this instrument shall operate as a deed and not as a mortgage." Mitchell owed Mandeville Mills $261.69 on a note dated May 25, 1932, which was due October 1, 1932. To secure this note he executed a ·bill of sale which was properly recorded. This note contained the following stipulation: "On or before October 1st, 1932, I, we, or either of us promise to pay to the order of Mandeville Mills, Carrollton, Georgia, two hundred sixty-one and 69/100 dollars. . . Said payee being expressly authorized to retain any general or special deposit, collateral, real or personal security or proceeds thereof belonging to us, now or hereafter in possession of said payee during the time this note remains unpaid, and before or after maturity apply same to this or other debt or liabilities to said payee due or to become due, to the holder of this note."

The court rendered judgment in favor of the Mandeville Mills against Mitchell, for $353.62 principal, and $64.20 interest, with future interest at 8 per cent. per annum, and costs, and decreed that this judgment be a lien upon the property in question and described in the security deed from Mitchell to the Peoples Bank. Mitchell excepted.

The only issue in this case is whether or not Mandeville Mills was entitled to a special lien against the property of Mitchell for the full amount of the indebtedness due Mandeville Mills, including the indebtedness that was not secured by the security deed. There was no dispute as to the indebtedness. If Mandeville Mills was entitled to collect the entire indebtedness due, and held by it against Mitchell, before it canceled and surrendered to Mitchell the security deed, its right to do this was based upon one of three instruments: the note executed by N. G. Mitchell to the Peoples Bank on January 23, 1932, or the deed executed by Mitchell to the bank upon that date to secure the note, or the note executed by Mitchell to Mandeville Mills on May 25, 1932. The note executed by Mitchell to Peoples Bank, dated January 23, 1932, gave to the bank the right to retain any and all deposits due by the bank to Mitchell, and also gave the right to the bank to claim the homestead exemption of Mitchell in the event of the bankruptcy and in the event that Mitchell himself failed to claim such homestead exemption.

We find nothing in the language of this note that would authorize Mandeville Mills as transferee to retain the security deed until the entire indebtedness of Mitchell was paid in full. The security deed executed by Mitchell on January 23, 1932, to the Peoples Bank to secure his note of that date to the bank, provided that upon the payment of the indebtedness due to the bank by Mitchell either as sole debtor, joint promisor, guarantor, or otherwise, the deed should be canceled and surrendered. Plainly this was a contract between Mitchell and the bank, which provided that upon the payment in full of the indebtedness secured by the deed Mitchell had a right to demand cancellation and surrender of the deed to him. The note from Mitchell to Mandeville Mills for $261.69 was executed three months later, on May 25th, 1932, and was not in existence and not in the contemplation of the contract between Mitchell and the bank on January 23, 1932.

The third instrument, and the one upon which Mandeville Mills bases its claim to the right to retain the security deed and a special lien upon the land in question until the full indebtedness of Mitchell is paid, contains this provision: "Said payee being expressly authorized to retain any general or special deposit, collateral, real or personal security, or proceeds thereof belonging to us, now or hereafter in possession of said payee during the time this note remains unpaid, and before or after maturity apply the same to this or other debt or liabilities to said payee due or to become due, to the holder of this note." In our opinion the language contained in this note from Mitchell to Mandeville Mills is not sufficient to authorize Mandeville Mills to retain the security deed or to claim a special lien upon the land until the note of $261.69 has been paid. That is, upon payment of the balance of $97 due by Mitchell to Mandeville Mills as transferee of the Peoples Bank, Mitchell was entitled to cancellation and surrender of the loan deed, and Mandeville Mills was not entitled to retain the loan deed or to claim a special lien upon the land in question until its own note of $261.69 had been paid.

The cases of *Moultrie Banking Co.* v. *Mobley,* 170 *Ga.* 402 (152 S. E. 903), and *Washington Exchange Bank* v. *Smith,* 149 *Ga.* 650 (101 S. E. 969), cited in the brief of the defendant in error, differ from the present case, in that in each of those cases the original debtor executed to the original creditor an additional obliga-

tion while the original creditor held the original obligation, and no third parties had intervened in the transaction, and the rights of no third parties were affected in any way.

This court held, in *Carrington* v. *Citizens Bank*, 144 *Ga.* 53 (5) (85 S. E. 1027), that a deed reciting that it is given to secure an existing indebtedness represented by notes for stated amounts, and also for subsequent advances or loans to be made to the grantor by the grantee, will include, inter partes, such subsequent advances as a part of the consideration. If this note for $261.69 had been executed by Mitchell to the Peoples Bank while the bank still held his two former obligations, then such note might have been secured also by the deed from Mitchell to the bank; but we are of the opinion that Mandeville Mills is not entitled to claim that this note, which was made to it, and not to the bank by Mitchell, is secured by the deed in question, or that it has a special lien upon the land to secure the payment of this note. Nor did any right of subrogation spring out of the payment of this debt of $97 by Mandeville Mills to the Peoples Bank. Mandeville Mills was a mere volunteer, and was not a surety in any way for Mitchell, and was not compelled to pay any debt of his to protect its own rights. See *Wilkins* v. *Gibson*, 113 *Ga.* 31 (38 S. E. 274, 84 Am. St. R. 204).

The ruling of the court, in so far as it creates a lien upon all the land, is a correct ruling by virtue of the attachment proceeding; but, as herein pointed out, the transferred security deed carried a lien on the property therein described only in so far as the indebtedness covered by the deed is concerned.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent.*