**Arthur T. STANTON, Appellant,**

**v.**

**Everett P. LARSH, Appellee.**

**No. 16002.**

United States Court of Appeals Fifth Circuit.

Dec. 11, 1956.

As Corrected on Denial of Rehearing Feb. 1, 1957.

5. See § 7122, I.R.C.1954.

6. See the dissent in Hodges v. United States, 5 Cir., 223 F.2d 140, 143 et seq.

Jos. D. Farish, Jr., Raymond R. Richardson, Farish & Farish, West Palm Beach, Fla., for appellant.

W. O. Mehrtens, Miami, Fla., Evans, Mershon, Sawyer, Johnston & Simmons, Miami, Fla., of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

Appellant sued on a contract of employment to recover damages for wrongful discharge. The district court granted defendant's motion for judgment on the pleadings. See Rule 12(c), Fed.Rules Civ.Proc. 28 U.S.C.A.

The contract of employment took the form of a letter from defendant to plaintiff, the body of which read as follows:

"Confirming our final arrangements by telephone for you to join my personal organization as of May the 1st, 1951, for special assignments, intended to relieve me of many details in the management of my various activities and interests, in the belief that there will be in a few months, the development of a more definite position, determined, of course, by the developments within my organization, as well as the results which you are able to achieve in this special work—

"Your salary to start will be $400.00 per month with an expense allowance for traveling, of $100.00, per month. This salary will be increased to $500.00 as of July the 1st, 1951, plus the expense allowance of $100.00 per month, with the expectancy of reasonable success in your efforts to show up by the end of 1951, we would expect to be able to have some more definite arrangements for your duties and responsibilities as well as definite headquarters established, at which time your salary will be $600.00 per month, with no expense allowance except as incurred in the line of your duties.

"We will also allow you packing and moving expenses and storage

costs of your personal effects until we can determine your permanent location.

"We believe that in this work you will have ample opportunity to use your well diversified and rounded business experience and contribute to the further development of my properties and interests.

"We are looking forward to a mutually satisfactory association."

According to the further averments of the complaint, the discussion of the future employment of plaintiff by defendant began in November of 1950. Several conversations ensued in the course of which

"The defendant was * * * advised by the plaintiff that such * * * employment would require the forced sale of plaintiff's laundry business at a loss, a business which defendant knew was earning the plaintiff some $10,000 a year. The plaintiff, at the same time, further advised the defendant that plaintiff had been offered an opportunity to enter into the operations of a real estate firm selling going businesses that held out great promise. * * in further conversations, the contemplated real estate transaction of the plaintiff was again discussed, and the plaintiff was advised by the defendant that, while the business opportunity offered the plaintiff the inducement of immediate gain the employment with the defendant in his several enterprises, as a long range assured income proposition, would offer more opportunities."

The letter above quoted was written in confirmation of the several conversations.

The complaint further averred:

"Plaintiff, in pursuance of these conversations and relying thereon, did sell his laundry business at a loss of $8,000 and did not commit or engage himself in the real estate transaction. Then, on or about the first day of May, the plaintiff surrendered his residence in West Palm Beach and removed his residence to Capps, Florida, on the plaintiff's first and temporary assignment in connection with the defendant's operations, there to be connected with the Tungston Plantation, one of the defendant's enterprises."

Other activities and interests of the defendant included timber operation and general farming near Tallahassee, Florida, a large machine shop and a business manufacturing electric motors and generators in Dayton, Ohio, a shipbuilding and repair yard in Miami, Florida, real estate operations in Miami and in Dayton, and oil well operations in Cuba.

The plaintiff commenced work at the "Tungston Plantation" near Tallahassee, Florida on May 1, 1951 and on August 6, 1951 he was discharged, according to the complaint "without justification or excuse."

It was and is the plaintiff's contention that the agreement expressed in the letter construed in the light of the previous conversations and the surrounding circumstances, especially plaintiff's loss on the laundry, constitutes a contract of employment terminable only for failure properly to perform the services. The defendant contends that the contract was indefinite and terminable at will.

■■ On defendant's motion for judgment on the pleadings, where no matters outside the pleadings are presented, the fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint. In other words, a judgment on the pleadings alone, if sustained, must be based on the undisputed facts appearing in all the pleadings. Bass v. Hoagland, 5 Cir., 172 F.2d 205, 207; 2 Moore's Federal Practice, 2nd ed. Para. 12.15, p. 2269.

■■ We do not agree entirely with the construction by either of the parties of the letter agreement in the light of the previous conversations averred and the surrounding circumstances. We think that the intent of the letter was too clearly expressed to be changed by any of

the conversations or circumstances alleged. It plainly stated that it was written,

"* * * in the belief that there will be in a few months, the development of a more definite position, determined, of course, by the developments within my organization, as well as the results which you are able to achieve in this special work * * * with the expectancy of reasonable success in your efforts to show up by the end of 1951 * * *."

On the other hand, it fixed a definite salary for each month through January of 1952, and was not terminable except for cause prior to the end of January. It was terminable then, or at the end of any month thereafter, by either party at pleasure. Knudsen v. Green, 116 Fla. 37, 156 So. 240.

Though plaintiff proceeded on too optimistic a theory, his complaint did state a claim upon which some relief can be granted in the absence of any good defense. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.